IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Maurice Marineau, et al.,

    Plaintiffs,

    v.                          Case No. 2:08-cv-996

Lang Masonry Contractors,
Inc.,

    Defendant.

OPINION AND ORDER

This is a diversity jurisdiction personal injury action filed by plaintiff Maurice Marineau, a citizen of the State of Arizona, against defendant Lang Masonry Contractors, Inc. ("Lang Masonry"), an Ohio corporation located in Waterford, Ohio. Plaintiff alleges that on January 15, 2008, while working for Trimat Construction, Inc., ("Trimat") at a construction site in Gallia County, Ohio, he was struck by a forklift being driven by an employee of Lang Masonry. Plaintiff alleges that as a result of this accident, he sustained permanent injuries and incurred lost wages and medical expenses.[1] Defendant filed an answer in which it denied that its employee was negligent, and asserted the defense that plaintiff's claim is barred or reduced by plaintiff's own contributory or comparative negligence.

This matter is before the court on plaintiff's motion for partial summary judgment filed on August 24, 2009. Federal courts

---

[1] Plaintiff also named the Ohio Bureau of Workers' Compensation as a defendant in this action, asserting that the Bureau has subrogation rights which would permit it to recover amounts paid to plaintiff following the allowance of his workers' compensation claim based on injuries allegedly sustained as a result of the alleged accident. On April 8, 2009, an order was entered re-aligning the Bureau as a new party plaintiff in this action.

sitting in diversity apply the substantive law of the forum state and federal procedural law. Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009). The availability of summary judgment in diversity actions is governed by the federal standard in Fed.R.Civ.P. 56. Id.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).

Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue. LaPointe, 8 F.3d at 378. In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8

2

F.3d 343, 3346 (6th Cir. 1993)(quoting <u>Anderson</u>, 477 U.S. at 251-53). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>see</u> <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451 (1992). A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Plaintiff Marineau has moved for summary judgment on the issues of negligence, absence of comparative negligence, and the status of defendant as the employer of the driver of the forklift. Defendant does not dispute that James Willard, the driver of the forklift, was a Lang Masonry employee. <u>See</u> Defendant's Memorandum, Doc. No. 32, p. 1. Therefore, plaintiff is entitled to summary judgment on that issue. However, defendant opposes plaintiff's motion for summary judgment on the issues of negligence and comparative negligence.

Plaintiff's negligence claim is based on Ohio law. To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured. <u>Lang v. Holly Hill Motel, Inc.</u>, 122 Ohio St.3d 120, 122-23, 909 N.E.2d 120 (2009).

"Generally, an individual has a duty of ordinary care, that is, he must exercise that degree of care which an ordinarily reasonable and prudent person exercises under the same or similar circumstances." <u>Richmond v. Ohio State University</u>, 56 Ohio Misc.2d 16, 18, 564 N.E.2d 1145 (Ohio Ct.Cl. 1989)(citing <u>Ward v.</u>

3

<u>Barringer</u>, 123 Ohio St. 565, 569, 176 N.E. 217 (1931)). The existence of a particular party's duty depends on the foreseeability of the injury. <u>Texler v. D.O. Summers Cleaners & Shirt Laundry Co.</u>, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998). The test to determine foreseeability is "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." <u>Menifee v. Ohio Welding Products, Inc.</u>, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "The amount of care required of a person to establish whether he has discharged his duty to another is variously referred to as the 'amount of caution,' the 'degree of care' or the 'standard of conduct' which an ordinarily careful and prudent person would exercise or observe under the same or similar circumstances." <u>Di Gildo v. Caponi</u>, 81 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969).

Under Ohio law, the contributory fault of the plaintiff may be asserted as an affirmative defense to a tort claim (other than an intentional tort). <u>See</u> Ohio Rev. Code §2315.32(B); Ohio R. Civ. P. 8(C). Ohio law provides:

> The contributory fault of a person does not bar the person as plaintiff from recovering damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in this action and of all other persons from whom the plaintiff does not seek recovery in this action. The court shall diminish any compensatory damages recoverable by the plaintiff by an amount that is proportionately equal to the percentage of tortious conduct of the plaintiff as determined pursuant to section 2315.34 of the Revised Code.

Ohio Rev. Code §2315.33. If it is determined by the trier of fact that plaintiff was negligent, then the plaintiff's recovery is

diminished by the percentage of fault attributed to plaintiff's negligence. See Ohio Rev. Code §2315.35. That section further provides:

> If the percentage of the tortious conduct determined to be attributable to the plaintiff is greater than the sum of the percentages of the tortious conduct determined to be attributable to all parties to the tort action from whom the plaintiff seeks recovery plus all persons from whom the plaintiff does not seek recovery in this action, the court shall enter judgment in favor of the defendants.

§2315.35. The question of whether the contributory negligence of a plaintiff is the proximate cause of the injury is typically an issue for the jury to decide. Texler, 81 Ohio St.3d at 681.

Plaintiff submitted an affidavit dated August 19, 2009, in support of his motion for summary judgment. In his affidavit, plaintiff stated that on January 15, 2008, he was working at the job site for the Gallia Academy High School, where he had been employed by Trimat since October of 2007. After determining that he needed assistance with his task of pumping water from around the footers, he started to walk back to the company office to speak with his supervisor. At the time, he was wearing earplugs for noise protection, safety glasses, and a safety helmet. Plaintiff further stated that he was struck from behind by a Lull forklift operated by an employee of Lang Masonry. Plaintiff stated that he did not come out from behind any view obstructions, and that he was visible as he was walking directly to the office. Plaintiff was thrown clear of the forklift by the impact. According to plaintiff, the operator of the forklift came up to him and stated that he had not seen plaintiff. The operator stated that he thought he had observed mud coming from his tire until he observed plaintiff's helmet hit the ground.

5

The record also includes plaintiff's December 9, 2009, deposition. Doc. No. 30. Plaintiff testified that he attended an eight-hour OSHA training seminar for the Gallia job, and that they had daily safety meetings. Dep. pp. 85, 91. Plaintiff stated that Trimat stressed being aware of the surroundings at the site, and that he knew that there were different types of equipment on the job site at all times. Dep. p. 101. On January 15, 2008, he was wearing a helmet, tinted safety glasses, and a hoodie. Dep. pp. 143, 145. He was also wearing earplugs, which reduced his ability to hear noise. Although he was not required to wear the earplugs at all times, he put them in every morning and wore them most of the day, except, for example, in the break area. Dep. pp. 146-148, 151.

Plaintiff further testified that he decided to ask his supervisor for help in pumping water from around the footer area, and proceeded toward the office trailer. Dep. pp. 130, 149. He walked along the mud and rock road which had been built to the construction site to support the weight of the big forklifts. Dep. p. 149. He testified that it was common to see the forklifts in this area. Dep. p. 50. Pallets of cinder blocks higher than his head were piled next to the mud and rock road. Dep. p. 152. He had left the mud and rock road and entered the asphalt area where the trailers and Porta Johns were located when he was struck by the forklift; however, he had no clear recollection of exactly where he was when he was struck. Dep. pp. 154-158. He was not paying attention to what was behind him, and did not hear the forklift coming. Dep. pp. 159-160. He stated that he could have been smoking at the time. Dep. p. 164. He observed the forks out of the corner of his eye, and took a step to his right, when he was

6

hit, possibly by the tire. Dep. pp. 160-166. The driver approached him and asked him "Where did you come from; I didn't see you." Dep. p. 169.

The record also includes the August 25, 2009, deposition of James Willard, an employee of Lang Masonry and the operator of the forklift. Doc. No. 29. Mr. Willard stated that he was licensed to operate a forklift, which required studying a safety manual and passing written and practical tests. Willard Dep. pp. 12-14. On the day in question, he was hauling mortar from the cement mixing area to the scaffold where other employees were laying block. Dep. p. 29. He was wearing earphones, which he used to receive messages from the workers when mortar was needed. Dep. pp. 30, 34. He was notified that more mortar was needed, and proceeded to drive his forklift to get a hopper or "tubby" to take to the cement mixing area to be filled with mortar. Dep. pp. 29-30. His forks were empty. The forklift had a steel cage above the driver's seat, but no mesh on the sides. Dep. p. 35. He was driving the forklift in second gear, which was faster than a walking pace, with the boom about a foot higher than its lowest position. Dep. pp. 40, 45. The ground was covered with ice and compacted snow. Dep. pp. 52, 54.

Mr. Willard further testified that he noticed what he thought was mud, or possibly his water bucket, fall off his tire. Dep. p. 40. He raised the boom, which obstructed his view of the right-side mirror, and observed plaintiff lying on the ground about twenty feet to the right rear of the forklift, and within twenty feet of the Porta Johns. Dep. pp. 40-45. He stopped when he observed plaintiff lying on the ground. Dep. p. 43. Mr. Willard did not see plaintiff before he raised the boom, and did not know

exactly where he struck plaintiff. Dep. p. 50. Mr. Willard disagreed with his supervisor's report that he was careless, and stated that he could see in front of him while driving the forklift, and that plaintiff was not there in front. He stated that he assumed that plaintiff came out from between the cinder block stacks, which were seven feet high and near the path used by people to reach the Porta Johns. Dep. pp. 49, 61. He testified that plaintiff was lying within twenty feet of the Porta Johns, and that blocks were to the right and twenty feet from where he stopped. Dep. pp. 49, 67. Mr. Willard was tested for alcohol and drugs following the accident, and no substances were detected. Dep. p. 50.

The record also includes the August 25, 2009, deposition of Jeff Rohrer, Willard's supervisor. Doc. No. 31. Mr. Rohrer testified that there was a gravel path which abutted perpendicular to the asphalt area where the work offices were located, and that someone going to the offices or to the Porta Johns would use this path, which was the only gravel area over the construction site. The gravel path was bordered on one side by a stack of cinder block pallets seven feet high, and by a pile of bags of mortar stacked the same height on the other side. The path was approximately ten feet wide. Dep. pp. 15-19.

Mr. Rohrer further testified that when he arrived at the scene, plaintiff was thirty-five feet from the Porta Johns, four to five feet from the edge of the asphalt area, and ten to fifteen feet away from the cinder block. Dep. pp. 15-14, 22-23. Plaintiff stated he had been going to the Porta Johns, but never stated that he was walking to the office and got hit from behind. Dep. pp. 22, 39. Plaintiff was twenty feet away from the forklift. Dep. p. 29.

8

Willard stated that he did not see plaintiff prior to the accident. Dep. p. 29. Mr. Rohrer stated in his report that the accident was due to the carelessness of both parties. Dep. p. 29. When asked for his reasons, he stated, "I figured if there was an accident, there was more than one responsible part to it." Dep. p. 30.

Considering the above evidence, the court concludes that genuine issues of material fact exist which preclude summary judgment on the issue of the negligence of the forklift operator. Unlike the approach taken by Mr. Rohrer in his report, negligence is never presumed under Ohio law. Wise v. Timmons, 64 Ohio St.3d 113, 116 592 N.E.2d 840 (1992). "In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary." Id. (quoting Biery v. Pennsylvania R. Co., 156 Ohio St. 75, Syll. ¶ 2, 99 N.E.2d 895 (1951)).

The mere fact that a vehicle hits an individual on a roadway does not establish negligence. Paulino v. McCary, No. 04AP-1186 (Tenth Dist. unreported), 2005 WL 2981298 at *3 (Ohio App. Nov. 8, 2005)(upholding summary judgment for driver where pedestrian, who was wearing headphones, was struck while attempting to cross the roadway outside a crosswalk, and no evidence was presented that the driver should have seen him). Plaintiff and Willard gave conflicting testimony concerning the accident. Plaintiff claimed in his affidavit that he was struck from behind. Willard testified that he had a clear view in front of him, and stated that he never saw plaintiff in front of him. If Willard's testimony is believed, a trier of fact might reasonably conclude that he was not at fault

9

in the accident.[2]

The evidence on the issues of whether plaintiff was also negligent, and if so, to what degree, also presents a jury question in this case. Plaintiff testified that he was wearing earplugs which diminished his ability to hear the approaching forklift. A pedestrian is under a legal duty to exercise ordinary care for his own safety, and whether he has done so in a particular case is a jury question where the evidence is conflicting. Horwitz v. Eurove, 129 Ohio St. 8, Syllabus, 193 N.E. 644 (1934). The Ohio Supreme Court has held that pedestrians and vehicle drivers are at all times required to use their senses in a manner that is reasonable under the circumstances. Will v. McCoy, 135 Ohio St. 241, Syll. ¶ 4, 20 N.E.2d 371 (1939); see also Grass v. Ake, 154 Ohio St. 84, 91-92, 93 N.E.2d 590 (1950)(holding that it was error for the trial court to refuse to give a charge on contributory negligence where there was evidence that the pedestrian had left the curb while looking straight ahead without looking for traffic prior to being struck).

A similar rule has been applied in cases involving accidents at railroad crossings. In the case of Wabash R. Co. v. Skiles, 64 Ohio St. 458, 60 N.E. 576 (1901), the Ohio Supreme Court noted that

---

[2]Plaintiff argues that Willard's testimony that plaintiff must have walked into the forklift from the gravel path area is a speculative opinion which should not be considered. Under Fed.R.Evid. 701, a non-expert witness may only testify to opinions or inferences "which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 701. Mr. Willard's testimony may satisfy these criteria. However, regardless of the admissibility of this testimony, it is not critical to the summary judgment analysis. Plaintiff himself testified that he approached the asphalt area from the gravel path. Further, even if this testimony is disregarded entirely, the evidence still presents genuine issues of material fact precluding summary judgment.

"ordinary prudence requires that a person in the full enjoyment of the faculties of seeing and hearing should use them when about to pass over a railroad track" and that "the omission to do so is contributory negligence when it immediately results in an injury which might have been avoided if the injured person had looked or listened." Id. at 471-72. See also Tidd v. New York Cent. R. Co., 132 Ohio St. 531, 9 N.E.2d 509 (1937)(person riding on a tractor in a position which obscured his view of railroad crossing was guilty of contributory negligence); Cleveland, Columbus, and Cincinnati Railroad Co. v. Crawford, 24 Ohio St. 631, Syll. ¶ 1 (1874)(failure to use faculties of hearing and seeing to discover and avoid danger from approaching train without reasonable excuse before attempting to pass over railroad crossing is contributory negligence). The court in Skiles upheld judgment for the defendant where the plaintiff, a railroad employee, testified that he did not see or hear the train approaching until it was upon him. The court noted,

> It is inconceivable that a man of ordinary prudence would under such circumstances have failed to look or listen before stepping on the track, so as to have both seen and heard the engine which was so closely following the passing train. To an ordinarily prudent man a railroad track is itself a warning to be alert, to use his senses, to look and listen; and an ordinarily prudent man would not blindfold himself, nor stop his ears, when about to exercise his intention of leaving a place of safety on the platform to cross the track in the presence of moving trains.

Id. at 470-71. This reasoning would also apply to a person working at a construction site, which "is inherently a dangerous setting." See Bond v. Howard Corp., 72 Ohio St.3d 332, 336, 650 N.E.2d 416 (1995).

Based on the evidence in the record, this court cannot say that plaintiff is entitled to judgment as a matter of law on the

issue of whether the forklift driver was negligent and on the defense of contributory negligence. Plaintiff's motion for summary judgment (Doc. No. 20) is granted in part and denied in part. The motion is granted on the issues of whether James Willard was an employee of Lang Masonry and whether he was acting within the scope of his employment at the time of the accident. In all other respects, the motion is denied.

Date: February 17, 2010                s/James L. Graham
                                      James L. Graham
                                      United States District Judge